IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,
    Plaintiff

       v.                                 Case No. 1:21-cr-10350-LTS-1

                                     FILED BY LEAVE OF COURT
                                     UNDER 6/21/23 ORDER, Doc. 381

HARRY TAM, et al.,
    Defendants

**POST-HEARING MEMORANDUM IN SUPPORT DEFENDANT'S OF
MOTION TO SUPPRESS WIRETAP EVIDENCE**

Defendant, Harry Tam, by his counsel, submits this memorandum in support of his May 3, 2023 Motion to Suppress Wiretap (Doc. 290).[1] At the June 16 court hearing on the pending motion to suppress, the government admitted that all calls under all intercept orders (the first and its single renewal) for interception of the TT-1 and TT-2 wiretap had been recorded in their entirety. According to the government, minimization in this case consisted of wire room staff not listening to non-pertinent calls but also not ceasing to record the non-pertinent calls and merely making notation of minimizations in the line sheets. The blue ray disks of digital intercepts later sealed by agents and the authorizing court therefore contain the pertinent, non-pertinent and "other" calls in their entirety.[2] All the non-pertinent and pertinent unminimized calls were produced in discovery under protective order and are available in their entirety for listening by government attorneys and defense counsel and, presumably, members of office staff

---

[1] The Court mentioned at hearing that it did not want further briefing on the motion to suppress. Respectfully, defendant finds, however, that there is pertinent case law worthy of discussion and, further, that statements by the government should be addressed post-hearing.
[2] The wiretap discovery shows that there was a third category of intercepts labeled "other".

1

and agents.  At hearing, counsel gave the example of being able to hear details of the medical and personal issues of defendant's sister without interruption by minimization even though the line sheets indicate that the call had been minimized.

Title III provides for suppression if "the communication was unlawfully intercepted."  18 U.S.C. § 2518(10)(a)(i).[3]  Defendant submits that all evidence gleaned from a wiretap should be suppressed because, of the approximately eight thousand communications intercepted, the government recorded all of them in their entirety, an unmitigated violation of the statutory command to minimize non-pertinent calls committed on every day of the wiretap and every intercepted call.

There can be no question that recording is interception.  The Wiretap Act expressly provides that: "intercept means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical or other device." 18 USC § 2510(4) (1982).  That provision applies here.[4]

Title III also provides for suppression on two additional grounds: where: "(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval."  18 USC §2518(10).  Defendant requested in a May 3, 2023 discovery letter (Doc. 319) the government's minimization instructions to the DEA's wire room.  The government has now assented to its

---

[3] "(10)(a) Any aggrieved person in any trial, hearing, or proceeding in or before any court . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—
(i) the communication was unlawfully intercepted;
(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
(iii) the interception was not made in conformity with the order of authorization or approval.

[4] The principle that recording is interception finds visceral affirmation.  Learning that someone has eavesdropped on a conversation may be upsetting, but the details of the conversation are subject to dispute over the accuracy of the eavesdropper's memory or his veracity.  Hearing one's own voice in a recording by an eavesdropper, however, produces emotions of dread and intimidation.

production along with its ten-day reports to the supervising court. This information is necessary for the Defendant to protect his rights and to fully develop an argument as to these two other grounds. Nonetheless, Defendant asserts now that the order was also insufficient on its face (second statutory ground) as argued below. 18 USC §2510(a)(ii).

1. <u>Agents may not engage in the wholesale recording of telephone calls even where they claim to have ceased listening to the non-pertinent parts. The statutory prohibition against such interception is a proscription against the digital acquisition of private conversations in the first place.</u>

Title III and the Fourth Amendment forbid the wholesale recording of non-pertinent conversations, even where agents claim to minimize them after acquisition. In *United States v. Simels*, 2009 WL 1924746 (E.D.N.Y. 2009), agents implemented a procedure which required minimization of certain attorney-client conversations. Such conversations were first provided to agents uninvolved with the investigation to review for privilege (referred to as "Wall Agents"), and then provided to uninvolved prosecutors for further review ("Wall ASUA's"), before providing only the pertinent conversations to the case agents and assigned prosecutors. The *Simels* court (Gleeson, J.) found that this post-interception minimization violated both the statutory text and the legislative intent to prevent eavesdropping on non-pertinent conversations. That is because, "a conversation is 'intercepted' when its content is either overheard or acquired by electronic recording." *Simels, supra* (citing § 2510(4)). Accordingly, "[b]y definition, an agent cannot minimize the interception of communications that should not be intercepted by intercepting all communications and sorting them out later." *Id*. at *3.

The government's attempt in *Simels* to justify its intercept-now/minimize-later approach by analogizing to foreign language interceptions which allow the government time to secure an interpreter was to no avail. Title III's statutory text yielded this result:

> Congress's use of the word "minimize" in consecutive sentences in § 2518(5)...mean[s] two different things. The first use explicitly directs that "[e]very" Title III order be conducted in a manner that "minimizes the *interception*" of nonpertinent communications. § 2518(5) (emphasis added). The next sentence, added in 1986, says that when coded or foreign language is being used and the necessary expert is not reasonably available "during the interception period, minimization may be accomplished ... after ... interception." *Id*. Unlike the original minimization provision, this sentence does not expressly state the object of the minimization. However, since the statutory language directs the code-breakers or translators to go to work "after ... interception" and outside "the interception period," what is "accomplished" by this is not the minimization of interception referenced in the previous sentence. Rather, it is a process that restricts the *dissemination* of conversations the government has already intercepted, not the interception itself.

*Id*. (emphasis in original).  In other words, where the conversation is in English, "minimize" means "record" and foreign language *post facto* minimization falls under a separate clause of §2518(5), inapplicable in *Simels*.   The court further explained, "the way to avoid intercepting privileged or nonpertinent communications (as opposed to merely avoiding the unlawful dissemination of communications that should never have been intercepted in the first place) is to take reasonable steps not to intercept them.  Automatically recording everything, even where that is followed by a post-interception minimization protocol, virtually guaranteed the interception of communications the government should not have seized."  *Id*. at *9.

The *Simels* court ordered suppression of the non-minimized conversations because, *inter alia*, they were "unlawfully intercepted" and the total failure to minimize (as that term is properly understood) violated the statute's core intent to "limit the employment of this extraordinary investigative device."  *See Id*. (citing *United States v. Giordano*, 416 U.S. 505, 527 (1974) (for the proposition that suppression is required only for violations of Title III's provisions which "directly and substantially implement" congressional intent and further finding that the minimization requirement is one such provision).

4

Here, the government likewise intercepted every conversation in its entirety as an agent or, as is often the case, a civilian contractor annotated on a line sheet points at which the conversation was not listened to, something which the government confusingly and incorrectly labeled as "minimized".[5] This procedure violated the statutory command to " minimize the interception of communications not otherwise subject to interception under this chapter[.]"  18 U.S.C. § 2518(5).  This directly implicated the evil which the statute aimed to avoid: in this case, capturing and memorializing the intimate conversations of innocent citizens in violation of a Soviet Era law meant to jealously cabin "this extraordinary investigative device." *Giordano*, 416 U.S. at 527. *Simels*, *supra* ("the way to avoid intercepting privileged or nonpertinent communications (as opposed to merely avoiding the unlawful dissemination of communications that should never have been intercepted in the first place) is to take reasonable steps not to intercept them.").  As in *Simels,* across-the-board violation of the minimization requirement requires wholesale suppression of the wire's fruits.  *See also United States v. Renzi*, 722 F.Supp.2d 1100 (D. Ariz. 2010) (government's unlawful interception of defendant's privileged attorney-client communications warranted suppression of entire wire).

Furthermore, in *Simels*, as here, it matters not how many people get to listen to an embarrassing conversation about someone's personal life.  In *Simels*, only the so-called "Wall Agents" were provided the opportunity to listen-in on privileged conversations.  In Defendant's case, the recordings were memorialized on a CD and given to the parties' attorneys and agents.  For example, Harry Tam's defense counsel, who does not represent Mr. Tam's sister, involuntarily now knows intimate medical and conjugal information about her.  "When the government deliberately intercepts nonpertinent communications, it is no comfort to those whose

---

[5] Counsel is uncertain whether calls to Defendant's attorney were also recorded.

privacy has been invaded that only government actors not involved in a particular criminal investigation will be listening to them." *Simels*, *supra* at *11. The violations here require the wire's suppression.

2. <u>The wire's authorizing order was insufficient on its face where it directed agents to cease "monitoring" nonpertinent conversations but to continue "intercepting" them.</u>

In violation of the statute, the judicial authorizing order made a false distinction between "monitoring" and "interception," and it improperly allowed for the continued recording of noncriminal, i.e., innocent conversations. For this reason, the order was "insufficient on its face." 18 USC 2518(10)(a)(ii). The judicial authorizing order (filed under seal and subject to a protective order) provided the familiar directive that, "all monitoring of wire and electronic communications be conducted in such a way as to minimize the interception and disclosure of communications not relevant to the investigation, or otherwise criminal in nature." The next sentence of the order, however, directed agents to cease "monitoring" nonpertinent calls. The following sentence directed agents to cease "interception" when agents could identify none of the conversants as "interceptees," unless the conversation appeared criminal in nature. Thus, according to the government's interpretation of the order (one it probably drafted), agents are supposed to take their headphones off when the conversation becomes nonpertinent, though they must only stop recording when none of the conversants are targeted interceptees and the conversation appears non-criminal. It therefore appears that "monitor" and "intercept" have a different meaning under this order, a distinction which may have permitted, in violation of the statute, the acquisition and recording of non-pertinent calls.

6

The term "monitoring" is not defined in the statute. This word appears just three times in the statute though not in reference to an agent's acquisition of potentially criminal information.[6] In contrast, "intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 USC 2510(4). If by directing agents to cease monitoring nonpertinent calls the order suggested that they need only stop listening, then the order is in violation of the statutory text which requires minimization and thus a halt to interception for all such nonpertinent calls. As argued above, it is the dragnet recording, that is, the interception of innocent conversations which the statute is meant to proscribe. The record-now/minimize-later protocol is confined to the foreign language or coded conversation context, but the acquisition of nonpertinent or innocent conversation is statutorily forbidden. See, *Simels*, *supra* at * 6 ("I have not found a single case in which the government has used (or a court has approved) post-interception minimization absent the statutory prerequisites of either coded or foreign language communications").[7]

Suppression is warranted due to this insufficiency. In *Simels,* the court found that an order's internal contradictions ran afoul of the statute. As mentioned above, the order in question contained the Standard Minimization terms for nonpertinent calls, including privileged conversations. But the order also called for an additional procedure, one which required the

---

[6] The term appears in the following sections which are not relevant here: *See* 18 USC § 2511(2)(a)(i)(a service provider or employee may intercept or disclose communications in the normal course of his business though he may not "utilize service observing or random monitoring except for mechanical or service quality control check"); § 2511(2)(b)(FCC agent may intercept calls "in discharge of the monitoring responsibilities" of 5 USC 47); § 2511(2)(g)(v)(decriminalization of interception by users who utilize the same frequency to broadcast or receive unscrambled or unencrypted information).

[7] The government's Wire Room memorandum (filed under seal) reinforced the practice of recording nonpertinent calls by defining minimization as merely setting down one's headphones while continuing to record. For example, the government's instructions concerning voicemail messages was that they were to be "intercepted and minimized as they are left on the target telephones on a real time basis."

interception of all communications, pertinent and otherwise, if the conversation involved the targeted attorney and his client so that such conversations could later be reviewed by a taint team. *Id*. at *12. Under the order's special procedure, during these conversations the agents were to "set down their headphones but continue to record the conversation." *Id*. This produced a contradiction: "[b]y following that order, the agents necessarily violated the Standard Minimization provision, which ordered them to conduct the monitoring so as to 'minimize the interception' of nonpertinent and privileged communications." *Id*. Thus, the *post hoc* minimization procedure essentially guaranteed the government would violate the directive not to intercept, i.e., record nonpertinent conversations in violation of Title III. So too here, by making a distinction between monitoring and interception the order improperly directed agents to continue interception of non-pertinent calls - if that was what the court intended in signing the order. For the reasons argued above, this violated a core tenant of Title III and requires suppression of the wire's fruits.

    3.  <u>Government's Failure to Make Minimization Determinations</u>

A general appeal to the factors which courts normally use to assess reasonableness all weigh against the government in a case which involved bright-line violations of the statute's core requirement. The protocol of record first minimize later is objectively unreasonable. Unlike the many cases in which minimization determinations are challenged under the aegis of *Scott's* objective reasonableness analysis, this case describes a protocol where calls are intercepted in their entirety without a minimization determination. *Scott v. United States*, 436 U.S. 128, 140-142 (1978) (agents near complete failure to minimize not unreasonable where calls difficult to interpret and involved multiple users speaking to a large number of drug customers). Under the circumstances of this case, each of the many minimization determinations reflected in the line

sheets to record but not listen-in are evidence of a failure to minimize. Courts examine for reasonableness the agents' minimization efforts under a totality of the circumstances test; here, there was no minimization effort made before recording communications. *See, e.g.*, *United States v. López*, Case No. 99-079, 2000 U.S. Dist. LEXIS 8060 at *21 (D. Me. Apr. 28, 2000) (citing *United States v. Hoffman*, 832 F.2d 1299, 1308 (1st Cir. 1987) (minimization "analyzed on a case-by-case basis looking to the reasonableness of the interceptor's conduct."). These factors include, for example, the nature and complexity of specific crimes, the government's thoroughness in implementing minimization precautions, and the level of judicial oversight. *United States v. Gordon*, 871 F.3d 35, 48 (1st Cir. 2017). Likewise, the Supreme Court in *Scott, supra,* suggested that more leeway is appropriate in sprawling conspiracies where agents are still identifying the characters or establishing categories of pertinent vs. nonpertinent calls. *See, e.g.*, *Scott, supra*. In the instant case, however, the government failed fundamentally to engage in minimization; it captured and recorded of calls contrary to the wire room staff's judgment that a call should have been minimized. The government simply intercepted every conversation in its entirety. The dragnet utilized in this case violated Tittle III's core requirement as regards minimization, demonstrates that the agent's actions were unreasonable and requires suppression of the unlawfully seized calls.

                                            Respectfully submitted,
Harry K. Tam, Defendant
By his counsel,
Zachary Lown
*/s/Zachary Lown*
88 Broad Street, Suite 101
Boston, MA 02110
617-676-7339

Kevin Barron
P.O. Box 290533
Charlestown, MA 02129

617-407-6837

CERTIFICATE OF SERVICE

      Counsel certifies that he has caused a true copy of this document to be served today on the attorneys for all the parties through the CM/ECF system of this District as set forth in the Notice of Electronic Filing and that no party requires service by other means.

/s/Zachary Lown