UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 21-CR-10350-LTS |
| ) | |
| (1) HARRY TAM, a/k/a "Legendary H" ) | |
|   a/k/a "HK", a/k/a Harry Kiahi TAM ) | |
| ) | |
| Defendant. ) | |

# UNITED STATES' (1) OPPOSITION TO DEFENDANT'S MOTION TO VACATE THE PRELIMINARY ORDER OF FORFEITURE AND (2) REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to the Court's order dated March 31, 2025, Doc. No. 806, the United States of America, by its attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully opposes the defendant Harry Tam's ("Tam") motion to vacate the Preliminary Order of Forfeiture entered on April 5, 2024 forfeiting Tam's interest in a white 2020 Lexus RX450H, bearing VIN number JTJHGKFA5L2011348, seized on or about March 23, 2022 (the "Lexus") and submits this reply brief in support of its Motion for Summary Judgment.

## I. TAM'S MOTION TO VACATE THE PRELIMINARY ORDER OF FORFEITURE SHOULD BE DENIED.

### A. Because Tam Did Not Challenge the Preliminary Order of Forfeiture of the Lexus on Direct Appeal, He Is Barred from Collaterally Attacking that Order.

As a preliminary matter, the time to challenge a defendant's liability for forfeiture is on direct appeal. Fed. R. Crim. P. 32.2(4)(C) ("The time for the defendant … to file an appeal from the forfeiture order … begins to run when judgment is entered."). Here, the Preliminary Order of Forfeiture was entered on April 5, 2024, Doc. No. 644, and Tam's Judgment, Doc. No. 645, docketed on April 9, 2024, specifically identified the Lexus for forfeiture on p.8:

☑ The defendant shall forfeit the defendant's interest in the following property to the United States: One white 2020 Lexus RX450H, bearing VIN number JTJHGKFA5L2011348, seized on or about March 23, 2022

Tam never appealed his criminal judgment, including the forfeiture of the Lexus. Thus, the forfeiture order is final as to Tam, part of his criminal judgment, and may be modified only in limited situations not present here.[1] *See United States v. Harvey*, 20 F.4th 71, 75 (1st Cir. 2021) (describing the rule of finality as a "bedrock principle that[,] subject to only a handful of narrowly circumscribed exceptions, a district court has no jurisdiction to vacate, alter, or revise a sentence previously imposed") (internal citations and quotations omitted). Accordingly, his motion to vacate the Preliminary Order of Forfeiture (Doc. No. 804) should be denied.

To the extent that Tam is raising Section 2255 grounds to vacate the Preliminary Order of Forfeiture, those too should be rejected. It is well established that arguments regarding the forfeiture of property are "not cognizable in a § 2255 proceeding" because forfeiture is "a monetary-type penalty and not release from confinement." *Rodriguez v. United States*, 132 F.3d 30, 1997 WL 770636 (1st Cir. 1997); *see also Smullen v. United States*, 94 F.3d 20, 25 (1st Cir. 1996) (holding that a claim that defendant is entitled to a reduced restitution order falls outside the scope of § 2255 which concerns a defendant's right to be released); *Beras v. Warden Moshannon Valley Corr. Ctr.*, 816 F. App'x 633, 635 (3d Cir. 2020) ("habeas relief is available only from 'custody.' Monetary components of a sentence generally do not qualify") (internal citations omitted). And "because [the Defendant] did not challenge any part of the forfeiture judgment on direct appeal, he has procedurally defaulted such a challenge." *United States v.*

---

[1] Although the court denied without prejudice Tam's effort to treat his motion to vacate as a notice of appeal of the Preliminary Order of Forfeiture (*see* Doc. No. 806), any such notice of appeal would be time barred by under Federal Rule of Appellate Procedure 4(b)(1)(A), as would be any motion for extension of time to file a notice of appeal, and, in any event, an extension would not be not warranted here. *See* Fed. R. App. P. 4(b)(4) ("Upon a finding of excusable neglect or good cause, the district court may—before or after the time has expired, with or without motion and notice—extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b).").

*Brown*, 599 F. Supp. 3d 1178, 1182 (M.D. Fla. 2022) (citing *United States v. Bane*, 948 F.3d 1290, 1294, 1296 (11th Cir. 2020) (failure to challenge forfeiture judgment on direct appeal precluded collaterally attacking forfeiture in a petition for writ of error coram nobis)).

### B. Tam's Other Arguments Are Meritless.

Tam's contention that he was not aware that the Preliminary Order of Forfeiture for the Lexus was entered and "was not given an opportunity to stake his claim on the 'Lexus'" is belied by the record. The Lexus was included for forfeiture in the criminal case via a Bill of Particulars, Doc. No. 167; it was the subject of a forfeiture motion filed prior to sentencing, Doc. No. 624; Tam filed an opposition to forfeiture that focused on the $95,450 in currency that was administratively forfeited, Doc. No. 625; and the government noted in its reply, Doc. No. 640, that Tam interposed no objection to the forfeiture of the Lexus. Not only was the Preliminary Order of Forfeiture docketed, Doc. No. 644, the forfeiture of the Lexus was also referenced at sentencing, Doc. No. 642 (the Court "grants 624 Motion for Forfeiture of Property Preliminary Order of Forfeiture as stated on record"), and in the Judgment. Doc. No. 645. Tam was represented by counsel who received ECF notices from the Court, including notice of the government's forfeiture motion, the forfeiture order, and the Judgment all referencing the forfeiture of the Lexus. Tam had notice and opportunity to object. That is all that is required.

Tam's contention that forfeiture should have been decided by a jury is flatly incorrect. Although this argument appears focused on the administrative forfeiture of the $95,450 in United States currency, there is no constitutional right to a jury finding on criminal forfeiture. *See, e.g., Libretti v. United States*, 516 U.S. 29, 49 (1995) ("the nature of criminal forfeiture as an aspect of sentencing compels the conclusion that the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection"). Accordingly, the forfeiture

determination is generally made by the Court, not the jury.  *See* Rule 32.2(b)(1)(A).  Where a defendant seeks to have his case tried by a jury, if either party requests, Rule 32.2 provides for a limited right to have the jury retained after conviction to determine the factual nexus between the property and the offense of conviction.  *See* Rule 32.2(b)(5).  If that request is not timely made, it is waived.  *See United States v. Kaufman*, 2023 WL 1871669 (2d Cir. Feb. 10, 2023).  Here, Tam waived his right to a jury trial, and, even had he not, there is no constitutional right to have a jury decide criminal forfeiture.

## II. THE GOVERNMENT'S SUMMARY JUDGMENT MOTION SHOULD BE GRANTED.

Summary judgment should be granted in favor of the United States, and the Lexus, in its entirety, should be forfeited.  *See United States v. Valentin-Acevedo*, 625 F. App'x 16, 18 (1st Cir. 2015) (granting summary judgment in an ancillary forfeiture proceeding).  Here, the petitioner Jade Chin ("Chin") has the burden of proof on the dispositive issue, and "must point to 'specific facts sufficient to deflect the swing of the summary judgment scythe.'"  *See Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010) (citation omitted).  "A properly supported summary judgment motion cannot be defeated by relying upon conclusory allegations, improbable inferences, acrimonious invective, or rank speculation."  *Id.* (citation omitted).

### A. None of Chin's Points in Opposition Are Sufficient to Defeat Summary Judgment.

In her Opposition, Doc. No. 809, and response to the government's statement of undisputed material facts (referred to herein as "SOF" (Doc. No. 799-1) and "Response" (Doc. No. 809-5)), Chin makes several points, none of which are sufficient to defeat the government's summary judgment motion.

First, Chin's contention that she was the primary driver of the Lexus, which the government is not disputing, does not defeat the government's summary judgment motion.  *See*

4

Opposition ¶¶1, 2; Response ¶55.   In the Preliminary Order of Forfeiture, the Court already found that the Lexus was used to facilitate drug activity and proceeds were used to purchase the Lexus.   And while she may have been the primary driver of the Lexus, Chin does not dispute that Tam used the Lexus when she would kick him out of the house, and that he stated that he used the Lexus when he was on one of his "binges"—*i.e.*, using drugs.   *See* Response ¶¶56, 57.

   Second, relying on an excerpt from Tam's PSR, Chin disputes that Tam received shipments, consistent with drug trafficking, from his co-conspirators beginning in at least April 2019.   *See* Opposition ¶3, Response ¶17.   While Chin does not dispute that she suspected Tam was dealing drugs prior to June 2020, *see* SOF and Response, ¶23, she points to the discussion in the PSR of a July 29, 2020 shipment to claim that was Tam's first shipment of drugs.   Opposition ¶3, Response ¶17.   But as set forth in the PSR, that July 29, 2020, shipment is but one example.   *See* PSR ¶10 ("Investigators monitored packages arriving at Midas Auto between about February and October 2020.").   And while Chin correctly observes that the government cites the lucrative nature of Tam's drug trafficking conspiracy based, in part, on shipments after the Lexus purchase, she ignores the evidence of Tam's drug trafficking activity, including her own undisputed suspicions, prior to the purchase of the Lexus.   *See, e.g., United States v. Cox*, 851 F.3d 113, 128 (1st Cir. 2017) (a court may order forfeiture of the proceeds from uncharged conduct that was part of the same scheme or conspiracy as alleged in the counts of conviction). In any event, the government has already met its burden that the Lexus is forfeitable, and Chin presents no competent evidence to rebut the fact of Tam's extensive drug trafficking activity— nor would any such evidence be relevant to Court's inquiry in these ancillary forfeiture proceedings.   *See* 21 U.S.C. § 853(k) (a third party may not challenge a forfeiture order "[e]xcept as provided in [21 U.S.C. § 853(n)]").

Third, whether Chin had cards linked to the Tam's BOA account that she could use or had the ability to transfer funds from Tam's BOA account, *see* Opposition ¶4, is irrelevant to the issue of ownership of that account; it is undisputed that Tam is the account holder, the account is in Tam's name only, and Chin is not an owner of that account. *See* SOF and Response, ¶36. Accordingly, any funds derived from Tam's BOA account and used to pay for the Lexus were Tam's alone. *See* SOF and Response ¶¶35, 36, 38. It is also undisputed that, prior to the purchase of the Lexus, $72,173 in cash deposits and $22,381 in P2P transfers from Tam's drug customers went into the BOA account—and remained in the BOA Account until the purchase of the Lexus. *See* SOF and Response ¶¶39, 41; *see also United States v. Corey*, 2006 WL 1281824, at 8-9 (D. Conn. May 9, 2006) (granting summary judgment in favor of the government in an ancillary forfeiture proceeding, using the lowest intermediate balance rule, where comingled funds were used to purchase property, following *United States v. Banco Cafetero Panama*, 797 F.2d 1154 (2d Cir. 1986)).

Fourth, Chin submits an additional statement, purportedly from Yim Lee ("Lee"), dated March 31, 2024, Doc. No. 809-4, that was not produced in discovery, not submitted as part of her claim in the administrative forfeiture proceedings, and not otherwise provided to the government prior to her Opposition.[2] It would be entirely appropriate for the Court to disregard this late-disclosed document. *See, e.g., Rowan v. Pierce*, 2023 WL 5672575, at 3 (D.P.R. Sept. 1, 2023) ("The timing of the proffered statements is also significant, and affidavits offered after the filing of a motion for summary judgment may constitute inappropriate attempts to

---

[2] As described in the government's Memorandum of Law, the government repeatedly asked Chin if she had any other documents that she intended to rely on in connection with her judicial petition. Chin stated at her deposition on November 15, 2024, more than six months after the date of Lee's additional statement, that she did not. *See* Doc. No. 800 at pp. 3-4.

manufacture issues of fact.") (citing *Escribano-Reyes v. Pro. Hepa Certificate Corp.*, 817 F.3d 380, 387 (1st Cir. 2016)); *Harriman v. Hancock Cnty.*, 627 F.3d 22, 30 (1st Cir. 2010) (affirming preclusion of affidavits of two witnesses from in summary judgment record who were known, but were not previously disclosed).

Even if the Court were to consider Lee's March 31, 2024, statement, it does not assist Chin. Lee states that "giving Harry and his siblings money … was the only way I was able to give them a form of my love." Doc. No. 809-4. The purpose of gifting this $30,000 in October 2018 "was for Harry and his family to use as they needed."[3] *Id.* Accepting this statement on its face, Lee says that her intent was to gift Tam—and Tam alone—$30,000 to use for his family needs. This is further confirmed by the undisputed facts that Chin was not present or living with Tam when Lee supposedly gave this money to Tam. SOF and Response ¶¶51, 52. In any event, as discussed in the government's Motion for Summary Judgment, Doc. No. 800 at pp. 13-14, there is no credible evidence that even if Tam's mother gave Tam this cash in 2018, it is the same cash used to purchase the Lexus in 2020—a purchase made primarily with cash denominations of under $100.[4] *See* SOF and Response ¶42.

As for the "additional $10,000 that was taken from [Lee's] Bank of America acount [sic]," referenced in Lee's statement, Doc. No. 809-4, this is the first time this alleged gift is

---

[3] Lee says she cashed the funds from a $30,000 Chase money order. Chase limits money orders to $1,000 (https://www.chase.com/personal/banking/education/basics/what-is-a-money-orders). It could have been a cashier's check, but that would have generated CTR, and there were no CTRs associated with Yim Lee. SOF and Response ¶48.

4 In her petition, Chin stated, under penalties of perjury, that regarding cash gifts from family members, "[s]maller amounts were spent, and the bigger bills were saved." Doc. No. 660. This statement further undermines her current claim that the $27,900 in small cash denominations spent on the Lexus are the same funds as Lee allegedly gave Tam years before the purchase of the Lexus.

referenced, and there has been no suggestion by Chin in any of the documents or testimony in this proceeding that these funds were used to purchase the Lexus. In her opposition, Chin also claims that "Yim Lee made cash withdrawals consistently in amounts between $2000 and $5000 over time," Opposition ¶5, but there is absolutely no record support for this claim or that these funds were connected to the Lexus.

### B. Chin Has Not Met Her Burden Under 21 U.S.C. § 853(n).

Chin has not put forth specific facts to establish that she has a cognizable interest under 21 U.S.C. § 853(n), and she is not entitled to the return of the Lexus. Tam purchased the Lexus, using drug proceeds and used the Lexus to facilitate illegal drug activity. As explained in its Motion for Summary Judgment, other than the $2,500 vehicle trade in, Chin has not established that she contributed any of her own funds to the purchase of the Lexus, *see* Doc. No. 800 at pp. 11-15, and conceded that Tam look large amounts of cash kept in the house when they argued. SOF and Response ¶53. Even assuming that some of the cash used to purchase the Lexus came from Tam's side earnings repairing vehicles (and not his side earnings as a drug dealer) and earnings from Midas, that would only mean that Tam purchased the Lexus, placed Chin's name on the title as a gift along with his, but used the Lexus to facilitate his drug trafficking.

Even accepting Chin's unsupported allegations about the cash (which the government does not accept, and the Court should reject for lack of support), Tam undisputedly paid for most of the Lexus.[5] Accordingly, even under that scenario, Chin's petition for return of the Lexus should be denied, and, at a minimum, partial summary judgment entered for the government. At

---

[5] Even assuming a 50/50 "ownership" split of the cash, which Chin has not established but only makes conclusory allegations about, Tam paid for 62% of the total purchase price with taxes and fees ($61,596.52) and 69% of the unit price ($55,313.17) of the Lexus.

most, Chin might be entitled to 4% of the net sale proceeds of the Lexus after disposition, reflecting the amount her vehicle trade in, but that $2,500 is less than the amount paid in taxes and fees on the Lexus and ignores that the Lexus was also used to facilitate drug trafficking while she had, at best, a nominal and not superior interest in the Lexus.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Harry Tam's Motion to vacate the Preliminary Order of Forfeiture. For the foregoing reasons, and those previously set forth in its Motion for Summary Judgment and associated filings, the United States also respectfully requests that the Court grant the United States' Motion for Summary Judgment and dismiss the Petition of Jade Chin.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney,

By:    /s/   *Carol E. Head*
CAROL E. HEAD
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100
carol.head@usdoj.gov

Dated: April 28, 2025

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants on the Notice of Electronic Filing. In addition, this document will be served via first class mail on Harry Tam, 78580-509, Federal Correctional Institution – Fort Dix, P.O. Box 2000, 5756 Hartford St. & Pointville Rd., Joint Base MDL, NJ 08640 and on Jade Chin, 23 Mansfield St., Allston, MA 02134.

/s/   *Carol E. Head*
CAROL E. HEAD
Assistant United States Attorney