UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HARRY TAM,<br><br>Defendant. | Criminal No. 21-10350-LTS-1 |

MEMORANDUM AND ORDER ON MOTION
TO VACATE UNDER 28 U.S.C. § 2255 (DOC. NO. 851)

August 25, 2026

SOROKIN, J.

Harry Tam pled guilty to four crimes stemming from his participation in a conspiracy to distribute methamphetamine on July 6, 2023. Doc. No. 401.[1] The following April, he was sentenced to 162 months' imprisonment. Doc. No. 645. Tam now challenges the effectiveness of the lawyer who represented him when he entered his plea and at his sentencing, arguing that Tam neglected to file a direct appeal due to his reliance on counsel's allegedly erroneous advice. Doc. No. 851 at 5. Having reviewed Tam's motion and the transcripts from his guilty plea and sentencing hearings, the Court has determined that no response by the government is necessary in the circumstances presented. For the reasons that follow, Tam's motion is DENIED.

Tam and nine co-defendants were charged following an investigation into a multi-state drug trafficking operation involving the shipment of packages containing methamphetamine from California to an auto-repair shop in Brookline, Massachusetts, where Tam worked. The

[1] Citations to items appearing on the Court's electronic docket ("Doc. No. __ at __") reference the document and page numbers assigned by ECF.

investigation spanned much of 2020 and 2021, during which time law enforcement monitored and seized packages, intercepted wire communications, and searched property associated with Tam. The investigation culminated in Tam's arrest in December 2021. Doc. No. 23.

Tam moved to suppress various categories of evidence the government intended to offer against him at trial.[2] After his suppression motions were fully briefed, the Court held a non-evidentiary hearing on the motions, Doc. No. 373, and received further written submissions from the parties. The Court denied Tam's motions on June 30, 2023. Doc. No. 397.

Days later, Tam asked the Court to schedule a Rule 11 hearing. Doc. No. 398. His plea was not pursuant to any written agreement with the government. See Doc. No. 401. During his change-of-plea hearing, neither party indicated that Tam had preserved his right to challenge the Court's suppression ruling as a condition of his plea—or that the plea was entered subject to any other conditions. Tam confirmed (among other things) that he had discussed the charges against him, and the facts and circumstances of his case, with his appointed lawyer; that he understood he had no plea agreement with the government; and that he was satisfied with counsel's representation and advice. Tam further agreed that he was pleading guilty of his own free will, and that he was doing so because he was, in fact, guilty.[3] Satisfied with Tam's responses during the colloquy, the Court accepted his unconditional (or "open") guilty plea.

---

[2] The motion was first filed by privately retained counsel. Doc. No. 246. Shortly thereafter, that attorney was disqualified from continuing to represent Tam, and a new lawyer was appointed. Doc. No. 260. The court-appointed lawyer, an experienced criminal defense attorney and member of the Court's CJA panel, filed new motions to suppress, which superseded the original motion and which the Court resolved on their merits. See Doc. No. 284 (seeking suppression of statements); Doc. No. 288 (seeking suppression of evidence seized after execution of search warrant); Doc. No. 290 (seeking suppression of wiretap evidence). The same lawyer continued representing Tam for his plea and sentencing.

[3] No final copy of the plea transcript appears on the docket because no party ordered it. The Court has reviewed a rough transcript of that proceeding to confirm that its colloquy of Tam

On April 4, 2024, this Court sentenced Tam to 162 months in prison, followed by ten years of supervised release. Doc. No. 645 at 3–4. Though he advanced various post-judgment requests to this Court via letters and other submissions, Tam did not appeal his judgment of conviction to the First Circuit.

About a year after his sentencing, in April 2025, Tam mailed to the First Circuit a pro se motion to vacate his conviction pursuant to 28 U.S.C. § 2255. Doc. No. 851; see Doc. No. 851-3. The First Circuit initially treated the submission as a motion seeking leave to file a second or successive § 2255 motion (a request that would be properly directed to the Court of Appeals, rather than to the District Court). See Doc. No. 851-2 at 1. But on August 18, 2026, upon determining that the motion was Tam's first (and, thus, that permission for its filing was not required), the Circuit transferred the matter to this Court. Doc. No. 850.

In his responses to the questions on the standard form, which this Court construes liberally, Tam advances a single challenge to counsel's effectiveness: "I was given wrongful advice that I waived my rights to appeal the denial of [the] wiretap suppression motion when I entered [an] 'open plea.' Had I known that I retained those rights, I would have filed a timely and proper motion to appeal the denial of [the] suppression motion." Doc. No. 851 at 5. Tam went on to enumerate arguments he would have advanced in an appeal challenging the Court's suppression ruling. Id. As relief, Tam seeks leave to file an appeal now challenging the denial of his suppression motion targeting evidence gathered via the government's wiretap. Id. at 13. He supported his motion with an affidavit elaborating:

> In the aftermath of the Court's order to deny the motion to suppress wiretap . . . this defendant did inquire with his counsel . . . if the decision/order was appealable. At the time, [counsel] informed me that I would waive all my rights to appeal if I pled

---

aligned with the standard plea colloquy the Court conducts with every criminal defendant during such a proceeding.

> 'open to the Court,' and that the only way in which to preserve my rights were if I went to trial and lost. Subsequently, I pled 'open plea' to the Court at the Rule 11 hearing . . . and believed my rights to appeal the suppression Order denial to be waived and hereby lost.
>
> Between the months of July 2023 until my sentencing in April of 2024, I inquired several more times with said counsel . . . if my rights to appeal were indeed truly waived. Each time, I was reassured that I could not appeal this decision.
>
> It was not until [the week prior to Tam's submission to the Circuit in April 2025] at the advice of inmates currently working at the legal law library at [Tam's prison] that I learned that [counsel's] advice to me was erroneous and untrue, and that I should file this argument in a 2255 motion to attempt to reopen this door and restake any rights I have to appeal the wiretap suppression denial to the appellate court. If I had known that appeal of the wiretap suppression decision was an option to me, I would have exercised this right by following properly and on time.

Doc. No. 851-1.

The Court will summarize the relevant legal standards, then explain why those standards foreclose relief here. Postconviction relief pursuant to § 2255 is an extraordinary remedy, available only to a defendant who makes "a sufficient showing of fundamental unfairness." Singleton v. United States, 26 F.3d 233, 236 (1st Cir. 1994). Tam bears the burden to establish by a preponderance of the evidence that he is entitled to relief. United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978). To assess whether a defendant has met this burden, a court generally must accept his factual averments as true, but "need not give weight to conclusory allegations [and] self-interested characterizations," among other similar statements. United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). It also goes without saying that the Court need not credit a defendant's statement of law—especially if the statement is plainly incorrect.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To make out a claim of counsel ineffectiveness, a defendant "must show both

deficient performance by counsel and resulting prejudice." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010); accord Strickland, 466 U.S. at 687. "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). The "deficient performance" prong requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; accord Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007).

A court may resolve a § 2255 motion without a hearing if the defendant's allegations "contradict the record," McGill, 11 F.3d at 225, or "the district judge is thoroughly familiar with the case," having presided over the relevant trial or change-of-plea hearing, Ouellette v. United States, 862 F.2d 371, 377 (1st Cir. 1988). A district judge "is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." McGill, 11 F.3d at 225. A "defendant is normally bound by the representations that he himself makes in open court at the time of his plea." United States v. Gates, 709 F.3d 58, 69 (1st Cir. 2013).

Applying these standards, the Court finds Tam is not entitled to relief because his sole claim is built on a faulty legal premise. "It is well-established that an unconditional guilty plea results in the waiver of errors preceding the plea." United States v. Castro-Vazquez, 802 F.3d 28, 32 (1st Cir. 2015). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). The First Circuit has "assiduously

followed" this rule—including where defendants seek to challenge suppression rulings after unconditional guilty pleas—"holding with monotonous regularity that an unconditional guilty plea effectuates a waiver of any and all independent non-jurisdictional lapses that may have marred the case's progress up to that point." United States v. Cordero, 42 F.3d 697, 699 (1st Cir. 1994); accord Castro-Vazquez, 802 F.3d at 33.

Tam's own submissions establish that his appointed lawyer advised him accurately, consistent with the foregoing well-settled and binding precedents. As those cases declare, Tam's guilty plea, tendered unconditionally and without any agreement by the government preserving Tam's right to appeal the suppression ruling, operated as a waiver of his right to appeal that ruling. His lawyer was right to tell him so. Tam has offered nothing demonstrating otherwise, besides a description of inaccurate legal advice provided to him by unnamed inmates working in his facility's law library. He cites no law supporting his claim, nor could he. The law is consistent with counsel's advice and contrary to that of Tam's fellow inmates.

Because counsel correctly informed Tam that he waived any challenge to the Court's suppression rulings by entering an unconditional guilty plea, Tam's motion to vacate (Doc. No. 851) is DENIED. And, as Tam has not "made a substantial showing of the denial of a constitutional right," see 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge